## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| MESHANTA MYLES, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 4:20-cv-00882 |
| CREDIT MANAGEMENT, LP, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT

**NOW COMES** Meshanta Myles ("Plaintiff"), by and through her undersigned attorneys, complaining as to the conduct of Credit Management, LP ("Defendant") as follows:

### NATURE OF THE ACTION

1.  Plaintiff brings this action seeking redress for violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692, and violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227.

### JURISDICTION AND VENUE

2.  Subject matter jurisdiction is conferred upon this Court by the FDCPA, TCPA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant's business is domiciled in the Eastern District of Texas and a substantial portion of the events or omissions giving rise to the claims occurred within the Eastern District of Texas.

### PARTIES

4.  Plaintiff is a natural person over 18-years-of-age and is a "consumer" as the term is defined by 15 U.S.C §1692a(3), and is a "person" as defined by 47 U.S.C. §153(39).

5.   Defendant is a third party debt collection company, with its principal place of business located at 6080 Tennyson Parkway, Suite 100, Plano, Texas 75024. Defendant's primary business purpose is to regularly collect defaulted debts owed to others.

### FACTS SUPPORTING CAUSES OF ACTION

6.   In or around April 2020, Plaintiff moved into a new home, requiring her to transfer her internet services provided by Spectrum.

7.   Soon after moving into her new home, Plaintiff informed Spectrum that her current equipment was not compatible. Spectrum was unable to provide a technician due to the COVID-19 pandemic, but sent new equipment it believed to be compatible.

8.   Upon receiving the new equipment, Plaintiff discovered that she did not have the cable hookup for the device. Plaintiff contacted Spectrum and was told a technician would come to retrieve the inoperable equipment. This confused Plaintiff, because she was under the impression that Spectrum would assist and install the necessary components to utilize her router.

9.   Frustrated over the sequence of events with Spectrum, Plaintiff decided to return the equipment and cease all services with them.

10. Shortly thereafter, Defendant acquired the right to collect an alleged defaulted Spectrum debt relating to Plaintiff's services and charges ("alleged subject debt").

11. In or around July 2020, Defendant began placing collection calls to Plaintiff's cellular telephone number (205) XXX-9653, in an attempt to collect on an alleged subject debt.

12. Plaintiff is and always has been the sole subscriber, owner, possessor, and operator of the cellular telephone number ending in 9653.

13. Defendant also began placing collection calls to Plaintiff's place of work, despite never providing authorization to contact her at her work phone number.

14. In or around July 2020, Plaintiff answered a phone call from Defendant to her work phone number and demanded it cease calling.

15. In or around August 2020, Plaintiff answered a phone call from Defendant to her cellular phone number and told them to cease calling.

16. During the call, Defendant's representative asked for any alternative numbers it can call and Plaintiff said "no." Defendant's representative stated that it would continue to place calls on her cellular phone number, if there were no other contact numbers.

17. Plaintiff's demands that Defendant's phone calls cease fell on deaf ears and Defendant continued its phone harassment campaign, calling Plaintiff's cellular and work phone numbers several times a day without her consent.

18. In total, Defendant placed or caused to be placed numerous harassing phone calls to Plaintiff's cellular telephone from July 2020 through the present day without her consent.

19. In the calls that Plaintiff did answer, Plaintiff was greeted by a noticeable period of "dead air" while Defendant's automated telephone system attempted to connect Plaintiff to a live agent.

20. Specifically, there would be an approximate 3 second pause between the time Plaintiff said "hello," and the time that a live agent introduced them self as a representative of Defendant.

21. Moreover, Plaintiff also hears what sounds to be call center noise in the background of each of Defendant's calls.

22. Upon information and belief, Defendant placed its calls to Plaintiff's cellular telephone using an automated telephone dialing system ("ATDS"), a telephone dialing system that is commonly used in the debt collection industry to collect defaulted debts owed to others.

23. Defendant has used numerous phone numbers to place collection calls to Plaintiff's cellular phone number, including but not limited to (205) 778-3167, (205) 778-3021, and (205) 778-1912.

24.  Upon information and belief, it may have also used other phone numbers to place calls to Plaintiff's cellular and work phones.

**DAMAGES**

25. Defendant's harassing phone calls have severely disrupted Plaintiff's daily life and general well-being.

26. Defendant's phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity, wasting Plaintiff's time, the increased risk of personal injury resulting from the distraction caused by the incessant phone calls, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, anxiety, loss of concentration, diminished value and utility of telephone equipment and telephone subscription services, the loss of battery charge, and the per-kilowatt electricity costs required to recharge her cellular telephone as a result of increased usage of her telephone services.

27. In addition, each time Defendant placed a telephone call to Plaintiff, Defendant occupied Plaintiff's telephone number such that Plaintiff was unable to receive other phone calls.

28. Concerned about the violations of her rights and invasion of her privacy, Plaintiff was forced to seek the assistance of counsel to file this action to compel Defendant to cease its unlawful conduct.

**COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

29. Plaintiff restates and realleges paragraphs 1 through 28 as though fully set forth herein.

30. Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

31. Defendant is a "debt collector" as defined by §1692a(6) because its primary business is the collection of defaulted debts owed to others and it regularly collects debts and uses the mail and/or the telephones to collect delinquent accounts allegedly owed to a third party.

32. Moreover, Defendant is a "debt collector" because it acquired rights to the alleged subject debt after it was in default. 15 U.S.C. §1692a(6).

33. The alleged subject debt in which Defendant attempting to collect upon is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

34. Defendant used the phone and mail to attempt to collect the alleged subject debt and, as such, engaged in "communications" as defined in FDCPA §1692a(2).

35. Defendant's communications to Plaintiff were made in connection with the collection of the alleged subject debt.

36. Defendant violated 15 U.S.C. §§1692c(a)(1), d, d(5), e, e(2), e(10), and f through its unlawful debt collection practices.

   **a.  Violations of FDCPA § 1692c**

37. Defendant violated §1692c(a)(1) when it continuously called  Plaintiff after being notified to cease communications. This repeated behavior of continuously and systematically calling Plaintiff's cellular phone over and over after she demanded that it cease contacting her was harassing and abusive. Even after being told to stop contacting her, Defendant continued its onslaught of phone calls to her work and cellular phone with the specific goal of oppressing and abusing Plaintiff into making a payment on the alleged subject.

38. Furthermore, the vast volume of calls shows that Defendant willfully ignored Plaintiff's pleas with the goal of annoying and harassing her into submission.

39. Defendant was notified by Plaintiff that its calls were not welcomed. As such, Defendant knew that its conduct was inconvenient, unwanted, and distressing to her.

### b.  Violations of FDCPA § 1692d

40. Defendant violated §1692d by engaging in abusive, harassing, and oppressive conduct by relentlessly calling Plaintiff's cellular and work phones seeking immediate payment on the alleged subject debt.

41.  Defendant violated §1692d(5) by causing Plaintiff's cellular phone to ring repeatedly and continuously in an attempt to engage Plaintiff in conversations regarding the collection of the alleged subject debt with the intent to annoy, abuse, or harass Plaintiff. Furthermore, Defendant continued to place these aforementioned calls after Plaintiff informed Defendant its calls were no longer welcome. Specifically, Defendant placed or caused to be placed numerous harassing phone calls to Plaintiff's cellular telephone from July 2020 through the present day, using an ATDS without her consent.

### c.  Violation of FDCPA § 1692e

42. Defendant violated §1692e, e(2), and e(10) when it used false, misleading, and deceptive means to collect and/or attempt to collect the alleged subject debt from Plaintiff. Even after being apprised of its unlawful acts, Defendant continued its harassing behavior by calling Plaintiff repeatedly in a deceptive and misleading attempt to force her to answer its calls and ultimately make a payment, despite notifying Defendant that its communications were not welcome. Through its conduct, Defendant misleadingly represented to Plaintiff that it had the legal ability to continue to contact her in an attempt to dragoon payment on the alleged subject debt.

**d.  Violations of FDCPA § 1692f**

43. Defendant violated §1692f when it unfairly and unconscionably attempted to collect on the alleged subject debt by continuously calling Plaintiff after Plaintiff requested that it cease communications. By placing voluminous phone calls after becoming privy to the fact that its collection calls were not welcome is unfair and unconscionable behavior.  These means employed by Defendant only served to worry and confuse Plaintiff.

44. As an experienced debt collector, Defendant knew or should have known the ramifications of collecting on a debt through incessant harassing phone calls to the phones of consumers.

45. Upon information and belief, Defendant systematically attempts to collect alleged debts through harassing conduct and has no procedures in place to assure compliance with the FDCPA.

46. As stated above, Plaintiff was severely harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff, MESHANTA MYLES, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

c.  Enjoining Defendant from further communicating with Plaintiff;

d.  Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

e.  Award any other relief as the Honorable Court deems just and proper.

### COUNT II – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

47. Plaintiff restates and realleges paragraphs 1 through 46 as though fully set forth herein.

48. Defendant placed or caused to be placed non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") without her prior consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

49. The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

50. Upon information and belief, based on the lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used an automated dialing system to place calls to Plaintiff's cellular telephone.

51. Upon information and belief, the ATDS employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

52. Upon information and belief, Defendant's phone system stores telephone numbers to be called, using a random or sequential number generator, which it used to call Plaintiff on her cellular phone.

53. The fact that Defendant's phone system continued to place calls after Defendant was aware that Plaintiff did not wish to receive further calls clearly evinces the fact that Defendant's phone system stored Plaintiff's phone number and continued to randomly or sequentially auto-dial Plaintiff's cellular phone number without her consent.

54. There would be no reason for Defendant to continue to contact Plaintiff, especially after having been notified to cease all telephone communications. Yet, Defendant's ATDS continued to keep Plaintiff's phone number stored, causing its system to randomly or sequentially dial the number dozens of times thereafter.

55. Any prior consent, if any, was revoked by Plaintiff's verbal revocations.

56. Defendant violated the TCPA by placing numerous phone calls to Plaintiff's cellular telephone from July 2020 through the present day, using an ATDS without her prior consent.

57. As pled above, Plaintiff was severely harmed by Defendant's collection calls to her cellular phone.

58. Upon information and belief, Defendant has no system in place to document and archive whether it has consent to contact consumers on their cellular phones.

59. Upon information and belief, Defendant knew its collection practices were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's expense.

60. Upon information and belief, Defendant's phone system stores telephone numbers to be called, using a random or sequential number generator, which it used to call Plaintiff on her cellular phone.

61. The calls placed by Defendant to Plaintiff were regarding business activities and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

62. Defendant, through its agents, vendors, representatives, subsidiaries, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

63. Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff, MESHANTA MYLES, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a.  Declare Defendant's phone calls to Plaintiff to be violations of the TCPA;

b.  Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C);

c.  Enjoining Defendant from further communicating with Plaintiff; and

d.  Awarding any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: November 13, 2020                              Respectfully Submitted,

<u>/s/ Omar T. Sulaiman</u>
<u>/s/ Alexander J. Taylor</u>
Omar T. Sulaiman, Esq.
Alexander J. Taylor, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
osulaiman@sulaimanlaw.com
ataylor@sulaimanlaw.com